**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Washington Field Office
131 M Street, NE Fourth Floor, Suite 4NWO2F
Washington, DC 20507
(800) 669-4000
Website: www.eeoc.gov

# DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

To: Dr. Faisal Mahmud PhD
545 Triadelphia Way Alexandria
ALEXANDRIA, VA 22312
Charge No: 570-2022-01088

EEOC Representative and email:   Natnael Worku
Investigator
natnael.worku@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 570-2022-01088.

On behalf of the Commission,

*Sung Ho Kim*   2022-05-02

Mindy Weinstein       For
Director

**Cc:**
Charnitta R Parker
George Mason University
Srochell@gmu.edu

Please retain this notice for your records.

FILED

## Section V: Relief

2022 JUL 15  P 3: 19

i. I am seeking USD One Million ($1,000,000) in monetary compensation for actual and general compensatory damages.

    Actual Compensatory Damages include:

    - Lost wages or lost employment income (USD $50,000 up until now, may increase based on the date of case settlement or trial)

    General Compensatory damages include but are not limited to:

    - Mental anguish, emotional, psychological, and social distress (USD $250,000)

    - Humiliation (USD $100,000)

    - Future lost wages (USD $200,000)

    - Inconvenience (USD $100,000)

    - Loss of enjoyment of life (USD $200,000)

    - Loss of opportunity (USD $100,000)

ii. In addition to the one million dollars compensation, any other associated costs (e.g., legal/court fees) will be paid by the defendant(s).

iii. Take disciplinary action (e.g., removing from the position) against Mr. Charles R Kreitzer, Dr. Janette K Muir, and those others who received preferential treatment (e.g., Ms. Laura J Todd) while discriminating against me.

iv. Issue a formal apology letter from the involved parties and acknowledgment from the University leadership about the discriminatory, unfair, and unethical treatment.

v. Ensure that there will be no derogatory remarks on my George Mason University track record due to this lawsuit, now or in the future.

*[signature]* 07.15.2022

## Section III. E: Details of the Complaint (continued)

**Charges I am bringing against defendants:**

i. Defendant(s) failed to protect my civil rights and discriminated against me based on my race, color, religion, and national origin.
ii. Defendant(s) threatened me when I wanted to file a complaint with HR. Defendant(s) asked me to settle things with them and NOT to go to HR. Defendant(s) retaliated against me.
iii. Defendant(s) harassed, abused, and verbally charged me because of my religious belief.
iv. Defendant(s) exhibited derogatory and unprofessional attitude and behavior in the workplace.
v. Defendant(s) used the power and position to hinder my potential job search that impacted my career and wellbeing.
vi. Defendant(s) gave preferential treatments to White Americans while discriminated against me based on my race, color, and national origin.

**Facts and Details of my Complaints:**

I am Dr. Faisal Mahmud, former Director for Digital Learning, George Mason University. I would like to submit this complaint, which presumably should have been raised long ago.

My job was terminated on January 26, 2022, based on "Termination without Cause." In my most recent performance evaluation in October 2021, I received "excellent" overall, the highest in the category. My George Mason University track record is excellent. You can verify that from my colleagues, team, and most recent performance evaluation. I can provide a copy of my annual review if needed and requested.

This formal complaint is against George Mason University (physical location: 4400 University Dr, Fairfax, VA 22030) and the individuals listed below who individually and collectively harassed, abused, retaliated, and discriminated against me based on my race, color, religion, and national origin.

a) George Mason University (GMU)
b) Mr. Charles R Kreitzer, Executive Director, Online Operations, GMU and
c) Dr. Janette K Muir, Vice Provost for Academic Affairs, GMU

## Section III. E: Details of the Complaint (continued)

**Specific complaints against GMU (Defendant a) are—**

i. As an institution, it failed to protect my civil rights and discriminated against me based on my race, color, religion, and national origin.

   George Mason University DEI (Diversity, Equity, and Inclusion) office never scheduled a meeting with me after I submitted a written complaint. My last working day was April 26, 2022, and I submitted DEI complaint on March 17, 2022. The only thing I received from the office was a generic response that they would be in touch, which they never did until my last working day.

   I even shared this information with HR VP Ms. Shernita Rochelle (hereinafter, Ms. Rochelle) during our 1-1 meeting (time of event: March 24, 2022, 3:30-4:30 PM).

ii. As an institution, GMU failed to act against discrimination and never took preventive measures against those who abused and harassed me. I also submitted written proof to Ms. Rochelle about how my superiors were forcing me to settle things with them without me going to HR. These superiors were using passive threats to retaliate if I went to HR. I submitted those proofs of evidence to HR, yet GMU failed to protect me from retaliation.

**Specific complaints against other defendant(s) (b and c) are—**

i. For discrimination against me based on race, color, religion, and national origin (June 2020 — April 2022).
ii. For creating and nurturing a culture that also violated my civil rights (12/09/2021).
iii. For retaliation because I wanted to go to HR. They also told me to resolve any discriminatory matters I faced without escalating them to HR. I was asked and threatened in person (during my meeting with Mr. Kreitzer) either solve any issues with them or face severe retaliation. I was also told to "suck it up" or there would be consequences if I could take things further to HR. (05/04/2021, 11/05/2021)
iv. For serving in favor of higher authority because of their positions and influence. Also, for showing an unprofessional, abusive, and disrespectful attitude towards me during our Zoom call (date and time of event: 12/14/2021, 3-4 PM).
v. For continuously harassing me after January 26, 2022.
vi. For using passive-aggressive threats to abuse me (June 2020 — December 2021).
vii. For creating a roadblock to potential job search by removing my web information from the university website (01/29/2022 — 03/28/2022).

### Section III. E: Details of the Complaint (continued)

Mr. Kreitzer intentionally asked the Operations Manager to remove my information from the website, which obstructed my potential job search.

From January 29, 2022 to March 28, 2022 (the University IT team can verify the accuracy of this information), my web information from the Stearns Center page (https://stearnscenter.gmu.edu/about-us/our-team/) and Mason Online (https://masononline.gmu.edu/about/team/) pages were removed. Since I brought this matter to Ms. Shernita's attention, the information was available again almost after two months. However, this negatively affected my potential job search.

While they removed my web information, another employee's information was still available even after she left GMU. I brought this to Ms. Rochelle's attention by email and during our meeting. Ms. Rochelle reviewed the authenticity of this complaint and admitted this unfair treatment in writing.

**Alleged discriminatory act #1: Terminating my job as a retaliation.**

This discrimination occurred on January 26, 2022 (the date Mr. Kreitzer gave me termination notice).

Previously I brought concerns to my supervisor (Mr. Kreitzer) and his supervisor (Dr. Muir) that I have been discriminated against in many ways—that includes treating unprofessionally and disrespectfully, using abusive language, using passive threats, etc. Every time I was told to solve any such matter with them (Mr. Kreitzer and Dr. Muir). That is, they told me NOT to go to HR.

Mr. Kreitzer was mistreating me since I was hired to the position after a competitive national search. At some point in May 2021, I informed Dr. Muir in writing about this unfair treatment and discrimination.

Once I asked Ms. Ryder, HR Employee Relations Consultant, what I should do in a case where I am a victim of discrimination and unfair treatment. She also told me to settle things with them (Dr. Muir and Mr. Kreitzer). I refrained from submitting a written complaint to HR because I feared retaliation after finding that even HR was acting in their favor for their positions.

**Alleged discriminatory act #2: Harassing me after termination notice.**

This discrimination occurred between February 1 — March 15, 2022.

Since I was handed the termination notice over a Zoom call, Mr. Kreitzer and Dr. Muir continued harassing me. They were accusing me of not handing over some a/c

## Section III. E: Details of the Complaint (continued)

credentials. I repeatedly mentioned to them that I handed over all my credentials (i.e., GMU relevant account information). Yet, their untiring efforts seem to establish the fact otherwise. This caused me distress in life and my wellbeing.

**Alleged discriminatory act #3: Preferential treatment of White Americans.**

This discrimination occurred between June 15, 2020 and January 26, 2022.

As the Director for Digital Learning, I managed a team of 10 staff. However, my direct supervisor (Mr. Kreitzer) forced me to change an evaluation for one of my staff (Ms. Todd). And because I disagreed, he overrode my staff's evaluation despite my valid concerns about her overall performance. That staff received preferential treatment because she is White American. Even after having multiple allegations and complaints against Ms. Laura Todd, Mr. Kreitzer and University higher leadership (including HR) treated her with preference. I also mentioned numerous times to Mr. Kreitzer that my 1:1 meeting with Ms. Todd was becoming challenging as she was abusing me. Various allegations against Ms. Todd can be verified by interviewing GMU Digital Learning team and Stearns Center staff.

Ms. Todd never attended any in-person meetings we had every Thursday on campus, following University and Stearns Center guidelines. Some team members also raised concerns about whether she was getting preferential treatment. I brought this to Mr. Kreitzer multiple times. He and other leaders were okay with practicing double-standard in the organization. I was Ms. Todd's immediate supervisor, yet I never could take any disciplinary action due to a lack of support from the university leadership and HR.

Another staff from my team (also White American) would take leave and skip submitting the timesheet. I reminded her multiple times that anyone taking any time/day off must complete and submit a timesheet to comply with the University policy. She ignored to do that. Before last winter break (November/December 2021), I had to submit her timesheet manually as she kept snubbing it. I also repeatedly discussed this issue with Mr. Kreitzer and Ms. Ryder (HR person). None of them cared at all about this concern and this caused distress in my workplace (and life) as I did not want to be a part of unjust system.

University HR and leadership rebuked me without taking any action. Their notion was to leave this as it is. My question is — am I not supposed to follow State and University policy to supervise and ensure whether employees submit their timesheet for any taken leave? Or should I ignore my responsibility and allow some specific team members to get preferential treatment?

Since I joined, the Digital Learning team's most common concerns were lack of equity and workload transparency. Mr. Kreitzer and other leaders gave more tasks to foreign-born employee. And this exact complaint was brought to me by one of the staff. I took

## Section III. E: Details of the Complaint (continued)

some initiatives over my 22 months tenure to implement new processes and systems that eventually brought equity and transparency while providing equal opportunity for every employee. While most team members were grateful and appreciative of this, a few (blessed by Mr. Kreitzer and University leadership) did not like it. It finally revealed the disparities in workload and preferential treatment of White Americans.

Mr. Kreitzer often used passive threats and abusive language when I brought concerns of any double-standard practice and unfair treatment. This behavior from Mr. Kreitzer caused me humiliation in front of my team which caused mental and social distress.

**Alleged discriminatory act #4: Discriminatory acts toward people of color.**

This discrimination occurred between June 15, 2020 and January 26, 2022.

On multiple occasions, Mr. Kreitzer overruled my decisions to give preferences for hiring White Americans. One of the latest examples is — we had two final candidates for an Instructional Technologist position. One of them was White American (Mr. X), and the other (Mr. Y) was a person of color. Of the two, Mr. Y was well qualified, and most of the team members also liked him (note: I also collected feedback from the team to get their perspectives). Although Mr. Y had all the qualifications and was a good fit, Mr. Kreitzer did not want to hire him. Mr. Kreitzer was not even supposed to rule over my decision as I was the hiring manager. Albeit Mr. Kreitzer did it. We had to offer the position to Mr. X, but he had already accepted another job elsewhere. So, at this point, without any reservation, we could offer the position to Mr. Y. Since Mr. Kreitzer did not like him, we had to start over the search.

This is one of the many examples where Mr. Kreitzer showed active and passive forms of aversion and discrimination against people of color.

Even though I was the hiring manager to make the final hiring call for this position, Mr. Kreitzer overruled my decision for his disdain for people of color.

This systemic discrimination from leadership continued to undermine my decisions which caused me humiliation, and mental and social distress.

**Alleged discriminatory act #5: Assigning me tasks before my official joining date.**

This discrimination occurred sometime between May 1 — May 30, 2020.

When I was offered this position sometime in May 2020, I was given tasks even before my joining date (my official joining date was June 15, 2020). I could not say no due to fear of retaliation. Before offering me the position in writing, I chatted with Mr. Kreitzer,

### Section III. E: Details of the Complaint (continued)

where he set his expectations and wanted me to work on some projects before my joining date.

This unprofessional and unfair act caused me emotional distress and inconvenience.

**Alleged discriminatory act #6: Team management transfer.**

This discrimination has occurred since the first day of my GMU chapter, which is June 15, 2020.

I joined George Mason University as the Director for Digital Learning and Co-Director for the Stearns Center for Teaching and Learning on June 15, 2020. Since I joined, my immediate supervisor Mr. Kreitzer showed hesitancy and reluctance to hand over my team. He supervised the Digital Learning team for a brief time since the last director retired. Technically, I was supposed to take the team over right after my joining date. However, whenever I asked Mr. Kreitzer about it, he ignored or avoided it. This dual leadership also created confusion and nuances in the team as they had to ask both Mr. Kreitzer and me to take any leave or approval for paperwork.

At one point, I gave up. Eventually, it was not until the year after, either in February or March 2021 (GMU HR can confirm the exact date), when this team transfer occurred.

Mr. Kreitzer deliberately took so long as he wanted to use his power and influence over my team. It was discriminatory and unprofessional. This behavior from Mr. Kreitzer caused me humiliation in front of my team which caused mental anguish and psychological distress.

**Alleged discriminatory act #7: Discrimination against religious freedom and practice.**

This discrimination occurred on December 9, 2021, and afterward.

Last year, we had our Christmas/Winter party on December 9, 2021. I do attend any such event. I take care of the arrangements to make everyone inclusive. I was present the whole time when another employee from a different faith observed her religious festival and shared the joy with us.

However, due to an urgent appointment, I could not participate in the first portion of the 2021 Christmas/Winter party. My counterpart (co-director for the Stearns Center) and my team knew my situation. I also mentioned this to Mr. Kreitzer in one of our previous meetings. However, he kept asking me where I was.

## Section III. E: Details of the Complaint (continued)

I planned and arranged the event with my co-director and informed her and my team about my absence for an urgent appointment, which Mr. Kreitzer was well aware of. And yet Mr. Kreitzer kept asking me. My question is — can you force someone to attend a Christmas party? Or passively rebuke and insult them for not participating in it for a cause or without a cause? I did not ask or expect anyone to attend any Islamic celebration (Ramadan, Eid, or other events). I even did not hear a single word from Mr. Kreitzer about how I was doing during the month of Ramadan. If attending or observing other religious festivals is not mandatory, why did this Christmas/Winter party become such a thing? And even though it is significant for Mr. Kreitzer and his superiors, can they show such attitude towards me for not attending/observing it for an urgent appointment?

Mr. Kreitzer misbehaved and acted in a way where my religious freedom was mocked and violated. I was treated as if it was a grave mistake not to attend the Christmas party. It was passive-aggressive behavior, and I had to explain why I could not participate in this year's event multiple times, in writing and in person.

George Mason University acts as if they respect employees regardless of their religion. However, that was not a reflection of the way they treated me. Mr. Kreitzer mentioned a few times that his boss (Dr. Muir) suggested that we share a Christmas spirit with the team, so he brought a special cake for us. He was telling us to do the same thing in the future. So, you passively show admiration for a specific religion while ignoring how others may feel when their religious events are ignored or overlooked.

This is not religious freedom looks like, in my humble opinion. I felt that my religious freedom was taken away which caused me immense amount of emotional, psychological, and social distress.

**Concluding Remarks:**

I am a foreign-born yet proud citizen of the United States of America. I am also a Muslim of Asian origin. I am a victim of discrimination and was treated unfairly by George Mason University and defendant(s) from the beginning. I was asked NOT to go to HR, and often they used passive threats to retaliate. Most recently (right before the 2021 winter break), I once shared with my immediate supervisor (Mr. Kreitzer) that I needed to submit a formal complaint to HR. And then they terminated my job. The only time I wanted to take it to HR, they just removed me.

This retaliation and my termination, followed by months after months of discrimination and unfair treatment (22 months to be exact), brought me physical, emotional, mental, psychological, and social distress. It also is humiliating for my family and me. My reputation and career are tarnished. The enjoyment of my life has been lost.

## Section III. E: Details of the Complaint (continued)

As a first-generation immigrant, it took years of hard work, dedication, resilience, and survival spirit to come to this position. George Mason University and the alleged parties not only discriminated against me on the basis of my race, color, religion, and national origin but also they violated my civil rights. I have seen how they treated other White Americans with dignity and fairness. However, it was completely opposite in my case. Because of these mistreatments, misbehavior, unfairness, retaliation, and job termination, I have suffered from physical, psychological, social, mental, and emotional trauma. It also affected my career, family and social status, job search, and overall wellbeing.

George Mason University DEI office did not schedule a meeting with me even after I submitted my complaint in writing. I talked about this situation with Ms. Rochelle, and she also admitted in writing that there are areas where she saw wrongful acts by my supervisor and other administrators. Yet, she told me that there was nothing she could do. This is even more frustrating when the HR admitted the wrongdoing but did not take any action due to the supremacy culture and systemic discrimination in the organization.

I am seeking justice here. I believe in our supreme law (the constitution) that protects the citizens' rights equally despite their race, color, religion, and national origin. I am submitting this complaint with the hope that justice shall prevail.

## DECLARATION

I, the undersigned, declare under penalty of perjury that the statements made in the above document are true and correct to the best of my knowledge, information, and belief.

(sign) _____    07.15.2022
                                          Date